The Chancellor.
John T. Smith and Company presented to the receivers of the Farmers and Mechanics’ Bank of *481 New-Brunswiek, a claim against the said bank for the amounl of a check for three thousand one hundred dollars, drawn by Joseph F. Eandolph and Company upon the Mechanics’ Bank ing Association of New-York, on the sixteenth of October, eighteen hundred and thirty-nine; which the receivers questioned, and, after hearing the testimony of the claimants, refused to allow.
From the determination of the receivers, the claimants appealed to the chancellor, whose duty it is made by the statute of the sixteenth of February, eighteen hundred and twenty-nine, (Elmer’s Dig. 36, pl. 23,) in a summary way to hear and determine the matter complained of.
Upon the argument, it was insisted by the counsel of the appellants, that the receivers have no power to sit in judgment upon the matter in question, nor to administer an oath.
The receivers derive their power wholly from the statute under which they were appointed, and have no authority which is not conferred by it. But this power need not bo expressly conferred; if it can be fairly implied from the general scope of the statute, or as incident to a power expressly given, it is sufficient.
The statute is not explicit upon the subject of administering an oath upon the investigation of claims; but it confers the power to hear and determine claims presented to them, and from their determination an appeal to the chancellor is given; and it is difficult to suppose that the legislature intended, that such determination should be made upon the mere allegations of the parties. If not so made, it must be on oath or affirmation, to be administered by the tribunal before which the matter is pending, or other legal evidence.
And I see no reason, upon the ground of interest or of propriety, why this should not bo so. A receiver is an indifferent person between the parties: Wyatt’s Prac. Reg. 355. He should be, and generally is, wholly disinterested in the subject matter of the suit: Bennett’s Master, 93. He is an officer of tho court In the matter of Burke, 1 Ball. and B. 74. He is but a crea *482 ture of the court, (Edwards on Rec. 3,) the hand of the court, and is therefore peculiarly qualified to investigate the matters in question, and to ascertain the truth of the allegations.
The claimants had the right to submit to this tribunal, or at their pleasure, to the verdict of a jury, on an issue to be made up between the parties, under the direction of a justice of the supreme court: Elmer, 35, pl. 19.
But whether this construction of the statute be correct or not, it can have but little influence upon the result of this case. If it be correct, and the proofs and proceedings were corum ñon judice, then the claimants are here without proof of their claim, and must fail.
I am satisfied with the form of proceeding adopted by the receivers, and will proceed to examine the merits of the case. If in so doing it shall appear that the claim is either legal or equitable, I will allow it.
The testimony of Carman F. Randolph, a witness produced on the part of the claimants, was received under objection, on the ground of interest, and in determining the case was rejected by the receivers.
The rules of evidence are generally the same in equity as at law: Manning v. Lechmere, 1 Atk. 453; Glynn v. Bank of England, 2 Vesey, sen. 41. And questions of the competency and incompetency of witnesses, and other proofs, the same in both courts: 2 Story’s Eq. 913, sec. 1527.
The receivers, in rejecting the testimony of this witness, did rightly, whether they were governed by the rules of law or of equity. He had a present, certain, vested interest in the event of the suit; he was liable to the claimants for the same demand, established by the judgment of a court of law; and if this claim should be allowed, and the whole or any part of it paid out of the assets of the bank, the witness will pro tcmto be discharged from his liability to the claimants.
Nor can the testimony be admitted upon the ground of tho agency of the witness.
The rule which allows an agent, ex necessitate rei, to give *483 evidence, applies only to agents employed in tlie ordinary transaction of commerce: Edmonds v. Lowe, 8 Barn. and Cress. 407; 15 Eng. Com, Law, R. 250.
Tlie claim then must rest upon the other proof taken in the case. From this it appears, that a twelve month prior to the date of the check, the bank was in the habit of redeeming its bills in the city of New York, and by its president, employed the claimants as their redeeming agents, and was to allow them for their trouble one quarter of one per cent., and to deposit with them five hundred dollars or one thousand dollars, and to redeem the bills daily.
A deposit of one thousand dollars, which was considered sufficient to cover the amount redeemed in any one day, was made with the agents and never withdrawn.
The president of the bank, who negotiated this matter, told the agents that his son or some one for him would call and redeem the money from them. A pass book was kept between the bank and its agent, which was generally used by the person who went to Smith and Company to redeem the money.
Under this arrangement, the money was redeemed from time to time; and Josliph F. Randolph and Company, one of whom was Carman F. Randolph, the son of the president, frequently received it and sent it to the president; sometimes the president received the money himself.
It would seem then, that Carman F. Randolph was thus constituted the agent of the bank, to receive the bills of John T. ■Smith and Company. While this ageney was in continuance, J. F. Randolph and Company gave to John T. Smith and Company the check in question, the amount of which the witness thinks was due for bills before and about that time delivered by Smith and Company to Randolph and Company.
What became of the bills for which the check is supposed to have been given, does not appear; whether they were delivered to the bank, or again put in circulation by Randolph and Company; nor whether any entry of their receipt was made in the pass-book. Nor does it appear how the bank usually accounted *484 to Smith and Company for the bills redeemed ; whether they were paid for in money, or credited at any time on account of the deposit.
The question then arises, were these persons, being thus the-agents of the bank, Smith and Company, to redeem the bills from the public, and Carman F. Randolph to receive them of Smith and Company, acting within the scope of the authority in giving and receiving this check ?
They were agents constituted for a particular purpose, and could not bind their principal if they exceeded their power: 2 Kent's Com. 484, and the eases there referred to.
The special authority must be strictly pursued, and whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limits of his power: 2 Kent, 484; Fenn v. Harrison, 3 T. R. 757. This rule will apply with peculiar force to the claimants, as they had full knowledge of the extent of the power of Carman F. Randolph.
Now it -is manifest that Smith and Company were not authorized to let bills go upon the credit of any but the bank ; and ,hat neither J. F. Randolph and Company nor C. F. Randolph ,vere authorized to endorse or draw for the bank.
When, therefore, J. F. Randolph assumed to pay for the bills _>y the check of his firm, he execeeded his authority. If J. F. Randolph and Company were acting as agents, and this transaction was on their own account, the result is the same, an excess of power; and so likewise did Smith and Company exceed their authority when they received the check. In so doing, they relied upon the responsibility of Randolph and Company, and must therefore bear any loss consequent upon such reliance.
Such construction was obviously put upon the transaction by the parties themselves; for although Randolph and Company-failed on the same day the check was given, and the bank waf still going on in business, and for aught that appears was thei able to pay the amount of the cheek, yet there is no evidence of any claim made upon the bank, or upon any of its officers, or of notice even of the non-payment of the check. But on the *485 contrary, Randolph and Company, then confessedly insolvent, •were prosecuted by Smith and Company upon this claim to judgment and execution, and only money enough made to about cover the costs of suit. And two years after the date of the check, it is presented as the evidence of a claim upon the funds of the bank.
On mature deliberation upon the whole case, I am satisfied that the claim of the appellants has no foundation in law or equity, and that the receivers have not en*d, but that their determination should be affirmed, with *osts.
Decree accordingly.
Cited in Jackson v. Receivers of Peoples Bk. of Paterson 1 Stock. 205.